IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

NOVEMBER 1996 SESSION



**FILED**

**June 26, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 02C01-9606-CC-00205 |
| | ) | |
| Appellee | ) | |
| | ) | MADISON COUNTY |
| V. | ) | |
| | ) | HON. WHIT LAFON, |
| CHRISTOPHER M. BARHAM, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Assault) |
| | ) | |
| | ) | |

For the Appellant:

Stephen P. Spracher
Assistant Public Defender
227 West Baltimore
Jackson, TN 38301
(At trial)

George Morton Googe
District Public Defender
227 West Baltimore
Jackson, TN 38301
(On appeal)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Mary M. Bers
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

James G. (Jerry) Woodall
District Attorney General

James W. Thompson
Assistant District Attorney
225 Martin Luther King Drive
Jackson, TN 38302

OPINION FILED: _____

REVERSED AND REMANDED

William M. Barker, Judge

**OPINION**

The appellant, Christopher M. Barham, appeals as of right his conviction in the Madison County Circuit Court of one count of assault. Appellant was sentenced to the maximum eleven (11) months, twenty-nine (29) days for the misdemeanor offense. This sentence was ordered to run consecutively to prior sentences unrelated to this conviction.

On appeal, Barham contends that the trial court erred by neglecting to instruct the jury on the defense of alibi. He also objects to the consecutive nature of his sentence. After a thorough review of the record, we find that the failure of the trial court to instruct the jury on the defense of alibi when it was fairly raised by the evidence constitutes reversible error. Therefore, the appellant's assault conviction is reversed and the cause is remanded to the trial court for a new trial.

On a Friday afternoon in the summer of 1994, appellant went to Evelyn Day's home in Jackson to visit his four-year-old daughter, Lakesha. Evelyn Day was the mother of the child and Lakesha's primary caretaker. Appellant had recently pursued his visitation rights and a court had ordered a regular visitation schedule. That particular day, however, was not one of the scheduled occasions.

When Ms. Day came to the door, appellant asked to see Lakesha. The child's mother let him in the house and they sat down on the couch in the den. According to Ms. Day, they started "playing around." However, appellant soon began twisting her arm. She told him that it hurt because she was suffering from carpal tunnel syndrome. They wrestled to the floor, where appellant then put her in a head lock. Lakesha was in the room and observed these events. Fearful that he was hurting her mother, she went over to appellant and started hitting him. Appellant became upset and picked up Lakesha, put her on his lap, and spanked her. Lakesha then ordered her father out of the house, a sentiment that was echoed by Ms. Day's mother, who had witnessed the incident.

2

Appellant went outside and asked Evelyn Day to accompany him to talk. She complied by following him into the garage. Appellant sat down in a patio chair, exposed his genitals to Day, and asked her to have sex with him. She declined his advances and a shouting match ensued. Appellant then left. In August of 1994, Ms. Day reported these events to the authorities after learning that she could not obtain a restraining order against appellant. As a result, appellant was indicted for two counts of assault, one against Evelyn Day and another against Lakesha. He was also indicted for indecent exposure.

At trial, when questioned about which day the assault occurred, Ms. Day candidly admitted that she did not remember the exact date. However, she testified that she distinctly remembers that it occurred on a Friday. Also, she stated that it was "around like two weeks before the 4th of July" and that it was close to the end of the month. Relying upon a 1994 calendar, it was determined that that date would have been June 24. She further testified that the incident occurred between 4:30 p.m. and 5:30 p.m. She had gotten off work at 4:00 p.m. and appellant stopped by just shortly after she arrived home. Specifically, she remembers looking at the clock at 5:10 and appellant had been there for a few minutes. She testified that the assault occurred soon thereafter.

Most of Ms. Day's testimony was confirmed by her mother, Ruby Day, with whom she resided. Ruby Day stated that she was washing dishes when the events occurred. She was able to observe her daughter and appellant because her kitchen and den adjoin in one large area. Ms. Ruby Day observed appellant twisting Evelyn's arm and also when he put her in a head lock. She confirmed that she ordered him to leave the house. Ms. Day had no firsthand knowledge about the events that occurred in the garage.

Three witnesses testified on behalf of appellant. Phoebe Pearson was appellant's girlfriend at the time of the incident. She testified that on the day of the incident she and appellant rode the bus downtown in the morning and then they

parted ways. Later that day, she encountered appellant at the Hello Gorgeous Beauty Shop where he was having his hair done. She and appellant left the shop around 3:00 p.m., and she drove him to his home where he changed his clothes for work. She dropped him off at work sometime between 4:00 and 5:00. On cross-examination, she admitted that she was not sure of the actual date when that happened. Pearson remembered that those activities occurred one day, but was relying on appellant's assertion that the assault happened on June 24, 1994. She also agreed that she had previously told an investigator that it could not have been on a Friday. Other inconsistencies from her earlier statement were revealed as well.

Vanessa Watkins, a stylist at the Hello Gorgeous Beauty Shop, also testified on appellant's behalf. She was aware of the day the alleged incident happened, but could not recall the particular events of that day. She did not remember whether appellant was in her shop on the day of the incident. Watkins said she often does not write down appellant's appointments and she had no notation concerning him on that day.

Finally, the appellant's supervisor at Po Folks restaurant, where he worked at the time of the incident, testified and introduced computerized records from the restaurant. Those records reflect that on June 24, 1994, appellant clocked in at 5:06 p.m. and clocked out at 11:07 p.m. She had no independent recollection of the hours that appellant actually worked that night.

The jury found appellant guilty of assaulting Evelyn Day, but acquitted him of the assault of Lakesha Day and the indecent exposure charge. No fine was imposed. The trial court later sentenced appellant to eleven (11) months, twenty-nine (29) days, the maximum for a Class A misdemeanor. The sentence was ordered to be served consecutively to appellant's unserved prior sentences.

Appellant first challenges the trial court's failure to instruct the jury on the defense of alibi.[1] He contends that he filed a notice of the alibi defense prior to trial and that such defense was supported by the proof. As a result, he argues that it was mandatory for the trial court to instruct the jury on this defense. He further contends that the failure to do so is reversible error. We are compelled to agree with appellant.

It is incumbent upon a trial court to give the jury a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn.), cert. denied, 476 U.S. 1145, 106 S.Ct. 2261, 90 L. Ed. 2d 706 (1986) (citation omitted). Trial courts have an affirmative duty to instruct the jury on every issue raised by the proof. Taylor v. State, 369 S.W.2d 385, 386 (Tenn. 1963). This duty for a full exposition of the applicable law extends to the accused's theory of defense, including the defense of alibi. Poe v. State, 370 S.W.2d 488, 491 (Tenn. 1963). See also State v. McPherson, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994) (citations omitted). When a defendant pursues an alibi defense at trial, the trial court must instruct the jury on the defense when it is "fairly raised" by the evidence. Manning v. State, 500 S.W.2d 913, 916 (Tenn. 1973); Poe, 370 S.W.2d at 491. See also Christian v. State, 555 S.W.2d 863, 864 (Tenn. 1977); State v. Hardin, 691 S.W.2d 578, 581 (Tenn. Crim. App. 1985). This duty exists irrespective of a request for the instruction by the defendant.[2] Poe, 370 S.W.2d at 491.

Our supreme court has provided three scenarios reflecting when an alibi defense has been "fairly raised," thereby making the instruction mandatory. Manning, 500 S.W.2d at 916. Those scenarios are:

---

[1] We note that appellant failed to raise this issue in his motion for a new trial. Ordinarily, this constitutes waiver. Tenn. R. App. P. 3(e); State v. Clinton, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988). However, as an exercise of our discretion, we have chosen to address the issue. Furthermore, we are mindful that the supreme court has alluded that the omission of the alibi defense in jury instructions may constitute plain error. See Manning v. State, 500 S.W.2d 913, 914 (Tenn. 1973) (holding that an appellate court is not precluded from considering an unassigned error on appeal if it seriously affects the fairness, integrity, or public reputation of judicial proceedings).

[2] As a result, appellant's failure to request the instruction at trial is of no consequence on appeal.

5

> (1) where the defendant's alibi has been corroborated by other credible witnesses;
> (2) where the victim has been unable to identify the defendant; or
> (3) where the proof against the defendant is wholly circumstantial.

Id. Only where the evidence fairly raises the defense by meeting one of the above circumstances does the trial court have an unequivocal duty to instruct the jury. Id. In contrast, where the evidence does not meet these circumstances, the trial court is not required to give such instructions. Id.; see also Hardin, 691 S.W.2d at 581; Almonrode v. State, 567 S.W.2d 184, 186 (Tenn. Crim. App. 1978). Because the evidence at appellant's trial satisfies the circumstances in the first example, we find that an instruction on the defense of alibi was warranted.

Appellant's only defense at trial was that he was not present in Evelyn's house at the time of the assault. Although he did not testify at trial, appellant's alibi defense was introduced through Phoebe Pearson's testimony and corroborated by Sheree Hixson, his supervisor at Po Folks. Pearson testified that she took appellant to work on the day of the assault between 4:00 p.m. and 5:00 p.m. Hixson produced time records from the restaurant where appellant worked. Those records reflected that on June 24, 1994, the alleged day of the assault, appellant began work at 5:06 p.m.[3]

This created a direct conflict in factual testimony. Evelyn Day testified positively that appellant was at her house at 5:10 p.m on the day of the assault. Appellant asserted, through Hixson's testimony, that he was at work that day at 5:06 p.m and remained there until after 11:00 p.m. Appellant could not be in two places at the same time. Thus, appellant fairly raised the defense of alibi and it was for the jury to evaluate the credibility of the witnesses and decide this factual issue. In order to properly perform its duty of applying the law to the facts, the jury must be instructed on the law applicable to all factual issues raised by the proof, including the alibi defense.

---

[3]We are aware that the date of the offense was not conclusively established. Based on information from the victim, Evelyn Day, the State proceeded on the theory that the offense occurred on June 24, 1994. Whether that was the exact day of the offense was a question of fact for the jury to decide.

Thus, appellant was entitled to an instruction on that defense to aid the jury in properly evaluating the proof.

Appellant also satisfied the inherent requirement that his alibi be corroborated by a *credible* witness. See State v. Johnny Wayne Brown, No. 88-153-III, (Tenn. Crim. App. at Nashville, April 28, 1989) (holding that alibi defense could not be considered fairly raised where it was not supported by credible evidence). Here, the credibility of the corroborating witness, Hixson, was never at issue. From all appearances, she was a disinterested witness and the State never attacked her credibility. At the time of trial, neither appellant nor Hixson worked at the restaurant. Thus, appellant's defense of alibi was corroborated by credible evidence, thereby making it incumbent upon the trial court to instruct the jury on this defense.

Finding that the trial court erred in its jury charge by omitting the alibi instruction, we cannot say that it is harmless error. When the defense of alibi is fairly raised by the proof at trial, the failure to so instruct the jury is reversible error. Poe, 370 S.W.2d at 490-91; see also Manning, 500 S.W.2d at 916. When an alibi is supported by the proof, the instruction is fundamental to the defense and essential to a fair trial. Poe, 370 S.W.2d at 491. It follows that appellant's conviction must be reversed and a new trial ordered.

For the benefit of the trial court on remand we will address the alleged errors in sentencing. Appellant argues that it was error for the trial court to order his misdemeanor sentence to be served consecutively to his prior sentences. Contrary to the trial court's ruling, he contends that such an order was not mandated by law. In addition, appellant argues that the trial court erred in ordering him to serve one hundred percent of this sentence.

At his sentencing hearing, the appellant testified that he had been on parole at the time of his conviction in this case and his parole was thereafter revoked in part for this conviction and in part for an unrelated parole violation. As the trial court was

7

pronouncing its judgment regarding the appellant's sentence for this offense, the prosecutor advised the trial court that by law the sentence for this assault conviction was required to be ordered to be served consecutively to the sentence being served by the appellant following his parole revocation. The trial court agreed and accordingly ordered the appellant to serve his eleven months and twenty-nine day sentence consecutively to his prior conviction.

Rule 32 of the Tennessee Rules of Criminal Procedure outlines those instances where consecutive sentences are mandatory. Since the appellant was convicted of misdemeanor assault in this case, Rule 32 did not make a consecutive sentence mandatory. Therefore, upon retrial, if the appellant is again convicted, the trial court should use its sound discretion in determining whether a sentence in this case should be served consecutively or concurrently with any other sentences. That decision, of course, should be made based upon the record and in accordance with the principles and guidelines of the Sentencing Act.

Finally, the trial court ordered that the appellant serve one hundred percent of this misdemeanor sentence. The misdemeanor sentencing statute provides for a maximum of seventy-five percent service. Tenn. Code Ann. § 40-35-302(d) (Supp. 1996). Our Supreme Court has held that one hundred percent service may be ordered in DUI cases only. State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). Therefore, the trial court may not order the appellant to serve more than seventy-five percent of any new misdemeanor sentence he may receive upon subsequent conviction.

As stated, we find that the trial court committed reversible error in failing to instruct the jury on the defense of alibi when it was fairly raised by the proof at trial. Accordingly, we reverse the appellant's conviction for assault and remand this cause to the trial court for a new trial.

8

_____

William M. Barker, Judge


_____

Gary R. Wade, Judge


_____

David G. Hayes, Judge